Ms. T. Elaine Holmes Hillsborough Transit Authority Attorney Post Office Box 172297 Tampa, Florida 33672-0297
Ms. Emeline C. Acton Hillsborough County Attorney Post Office Box 1110 Tampa, Florida 33601
Dear Ms. Holmes and Ms. Acton:
On behalf of the Hillsborough Transit Authority and the Hillsborough County Board of County Commissioners, you ask substantially the following questions:
1. May the 5-cent local option fuel tax levied under section336.025(1)(b), Florida Statutes (1996 Supplement), be used for public transportation operations and maintenance expenditures or must such tax revenues be used only for capital improvements?
2. Must the expenditures discussed in Question One be specifically identified in the capital improvements element of the county's adopted comprehensive plan?
3. May the county contract with a public transit authority to provide the transportation services enumerated in the capital improvements element of the county's comprehensive plan?
In sum:
1. If the capital improvements element of the Hillsborough County's comprehensive plan identifies the need for a public transportation facility, the local option tax revenues imposed under section 336.025(1)(b), Florida Statutes (1996 Supplement), may be used not only for the capital improvement of such facility but also for its operation and maintenance.
2. The capital improvements element of the county's comprehensive plan must identify the needed public transportation facility, the estimated facility's costs, including operation and maintenance costs, and specify that funding shall come from the local option fuel tax in order for such tax revenues to be used for that purpose.
3. The county commission may contract with and provide funding to the public transit authority to implement the public transportation services referenced in the capital improvements element of the county's comprehensive plan if the county commission determines that such funding serves a county or dual purpose.
Question One
Section 336.025, Florida Statutes (1996 Supplement), authorizes the board of county commissioners, by a majority plus one vote of the board, to levy a "1-cent, 2-cent, 3-cent, 4-cent, or 5-cent local option fuel tax upon every gallon of motor fuel sold in a county and taxed under the provisions of part I of chapter 206."[1] Monies received from such tax must be used "only for transportation expenditures needed to meet the requirements of the capital improvements element of an adopted comprehensive plan."[2]
Section 336.025(7), Florida Statutes (1996 Supplement), defines "transportation expenditures" for purposes of the statute to mean expenditures by the local government from local or state shared revenue sources, excluding expenditures of bond proceeds, for the following programs:
"(a) Public transportation operations and maintenance.
(b) Roadway and right-of-way maintenance and equipment and structures used primarily for the storage and maintenance of such equipment.
(c) Roadway and right-of-way drainage.
(d) Street lighting.
(e) Traffic signs, traffic engineering, signalization, and pavement markings.
(f) Bridge maintenance and operation.
(g) Debt service and current expenditures for transportation capital projects in the foregoing program areas, including construction or reconstruction of roads."
While the definition of transportation expenditures includes public transportation operations and maintenance, the question has been raised as to whether the language of section 336.025(1)(b)3., Florida Statutes (1996 Supplement), limits the use of the tax revenues to capital improvements.
As noted above, section 336.025(1)(b)3., Florida Statutes (1996 Supplement), requires that the revenues received from the tax imposed under section 336.025(1)(b) be used for transportation expenditures needed to meet the requirements of the capital elements of the county's comprehensive plan. In defining "transportation expenditures," the Legislature has expressly included public transportation operations and maintenance. While section 336.025(1)(b)3. requires that the tax revenues be used for those capital improvements, the definition of "transportation expenditures" would appear to permit such revenues to be used for the operations and maintenance of such improvements. This office has previously stated that counties are authorized to use local option fuel tax moneys received pursuant to section 336.025, Florida Statutes, to fund public transportation operations.[3]
You have advised this office that the capital improvements element of the Hillsborough County's comprehensive plan identifies public facilities that are needed in the county. You further state that mass transit is included in the capital improvements element as a "Category A" public facility.
Accordingly, if the capital improvements element of the Hillsborough County's comprehensive plan identifies the need for a public transportation facility, the local option tax revenues imposed under section 336.025(1)(b), Florida Statutes (1996 Supplement), may be used not only for the capital improvement of such facility but also for its operation and maintenance.
Question Two
Section 163.3177(3)(a), Florida Statutes (1996 Supplement), provides that the comprehensive plan shall contain a capital improvements element designed to consider the need for and location of public facilities in order to encourage the efficient utilization of such facilities and sets forth:
"1. A component which outlines principles for construction, extension, or increase in capacity of public facilities, as well as a component which outlines principles for correcting existing public facility deficiencies, which are necessary to implement the comprehensive plan. The components shall cover at least a 5-year period.
2. Estimated public facility costs, including a delineation of when facilities will be needed, the general location of the facilities, and projected revenue sources to fund the facilities.
3. Standards to ensure the availability of public facilities and the adequacy of those facilities including acceptable levels of service."
Thus, estimated facility costs and projected revenue sources must be included in the capital improvements element of the comprehensive plan. In addition, the plan must contain materials describing the principles, guidelines and standards needed for the orderly and balanced future development of the area.[4] The statute, however, contemplates annual review of the capital improvements element and recognizes that corrections, updates, and modifications may be made.[5]
As discussed in Question One, section 336.025(1)(b), Florida Statutes (1996 Supplement), requires the monies from the local option fuel tax to be used for those transportation expenditures needed to meet the requirements of the capital improvements element of the Hillsborough County's comprehensive plan.
In light of the above, I am of the opinion that the capital improvements element of the county's comprehensive plan must identify the needed public transportation facility, the estimated facility's costs, including operation and maintenance costs, and specify that funding shall come from the local option fuel tax in order for such tax revenues to be used for that purpose.
Question Three
The courts of this state and this office have recognized that county funds may be expended for projects that serve a dual governmental purpose.[6] For example, in Attorney General Opinion 89-84, this office stated that a county, after determining that a county purpose would be served, was authorized to financially assist the special district created to provide countywide ambulance service. The determination, however, of whether an expenditure serves a county purpose, albeit a dual purpose, must be made by the governing body of the county.
You have not advised this office of any provision prohibiting the county from entering into an agreement with another governmental entity to implement the capital improvements element of the comprehensive plan.
Accordingly, the county commission may contract with and provide funding to the public transit authority to implement the public transportation services referenced in the capital improvements element of the county's comprehensive plan if the county commission determines that such funding serves a county or dual purpose.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tall
[1] Section 336.025(1)(b), Fla. Stat. (1996 Supp.). Such tax must be levied before July 1, to be effective January 1 of the following year. Section 336.025(1)(b)1., Fla. Stat. (1996 Supp.).
[2] Section 336.025(1)(b)3., Fla. Stat. (1996 Supp.).
[3] See, Op. Att'y Gen. Fla. 90-79 (1990), stating that local option tax moneys may be used to fund transportation services for the transportation disadvantaged.
[4] See, s. 163.3177(1), Fla. Stat. (1996 Supp.), stating that the comprehensive plan shall consist of materials in such descriptive form, written or graphic, as may be appropriate to the prescription of principles, guidelines, and standards for the orderly and balanced future economic, social, physical, environmental and fiscal development of the area.
[5] Section 163.3177(3)(b), Fla. Stat. (1996 Supp.).
[6] See generally, State v. Sarasota County, 372 So.2d 1115
(Fla. 1979); Op. Att'y Gen. Fla. 94-22 (1994), in which this office advised the Monroe County Commission that it was authorized to loan county funds to a municipal service benefit unit for road reconstruction projects that serve a county purpose or a dual county and special district purpose and may require that such monies be repaid upon their collection from property owners within the unit.